FILED BY _____ D.C.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE   05 AUG 11  PM 3: 53
WESTERN DIVISION

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

WILLODEAN P. PRECISE,              )
                                  )
        Plaintiff,                )
                                  )
v.                                )     No. 04-2448 Ml/An
                                  )
DUNCAN-WILLIAMS, INC.,            )
                                  )
        Defendant.                )

ORDER DENYING PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT AND
TO RECONSIDER DENIAL OF LEAVE TO AMEND

Before the Court is Plaintiff's Motion to Alter or Amend

Judgment and to Reconsider Denial of Leave to Amend, filed on

November 16, 2004.  Defendant responded in opposition on November

22, 2004.  Plaintiff submitted a supplemental memorandum on

December 3, 2004, to which Defendant responded on December 13,

2004.  For the following reasons, Plaintiff's motion is DENIED.

This case arises from the sale and subsequent default of

municipal bonds.  On June 7, 2000, Plaintiff purchased $5,000

worth of Capstone Improvement District, Brookwood, Alabama

Improvement Bonds ("Capstone Bonds") from Defendant, a broker-

dealer engaged in the securities business.  Defendant was a co-

underwriter of the Capstone Bonds.

From the time of purchase of the Capstone Bonds until August

of 2002, Plaintiff received semi-annual interest payments.  In

August of 2002, the bond issuer defaulted on the interest

This document entered on the docket sheet In compliance
with Rule 58 and/or 79(a) FRCP on  8-12-05

payments due from the Capstone Bonds.  On approximately September 30, 2003, Defendant sent Plaintiff a letter offering to re-purchase the Capstone Bonds from Plaintiff at twenty-five percent of their original purchase price.  In order to accept the offer, Plaintiff was required to sign a general release in favor of Defendant.  Plaintiff signed the release and sold her Capstone Bonds back to the Defendant.  Thereafter, Plaintiff received and deposited a check for $1,250.00 from Defendant.

On November 4, 2004, the Court entered an order granting Defendant's motion to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiff signed a release of all claims against Defendant in exchange for the re-purchase of the Capstone Bonds. (See Order Granting Def.'s Mot. to Dismiss, November 4, 2004 (Docket No. 31) at 3-7.)  In that order, the Court also denied Plaintiff's motion to amend her Complaint to add a new plaintiff who neither re-sold his bonds to Defendant nor signed a release of any suit rights because the proposed amendment did not affect the Court's analysis regarding the release signed by Plaintiff. (Id. at 6, n. 1.)  Plaintiff moves the Court to reconsider its dismissal of her claims and motion to amend because Defendant allegedly obtained the release by fraudulently failing to disclose material information.

As the Court noted in its November 4, 2004, order, "[a] general release covers all claims between the parties which are

2

in existence and within their contemplation...." <u>Cross v. Earls</u>,

517 S.W. 2d. 751, 752 (Tenn. 1974). A general release is binding

"[a]bsent fraud, misrepresentation, or duress, and where a party

has a reasonable opportunity to consider its terms...." <u>Evans v.</u>

<u>Tillett Bros. Const. Co</u>, 545 S.W. 2d. 8, 11 (Tenn. Ct. App.

1976)(citing <u>Akard v. Standard Accid. Co.</u>, 8 Tenn. C.C.A. 497

(Higgins)). Tennessee law also provides that "[c]oncealment or

nondisclosure constitutes fraud when the party charged with fraud

has knowledge of an existing fact or condition and a duty to

disclose." <u>Hill v. John Banks Buick</u>, 875 S.W.2d 667, 670. As

the Court noted in its November 4, 2004, order, because the

relationship between an investor and his or her stock broker is

intrinsically fiduciary, Plaintiff meets the duty prong.[1] <u>See</u>

<u>French v. First Union Sec., Inc.</u>, 209 F. Supp.2d 818, 825 (M.D.

Tenn. 2002). Plaintiff must also demonstrate, however, that the

existing fact or condition materially affects the agreement.

<u>Hill</u>, 875 S.W.2d at 670.

Plaintiff contends that her Complaint alleges that she

signed the release because of Defendant's failure to disclose

---

[1] The requisite duty to disclose arises when: (1) there is a previous definite fiduciary relation between the parties; (2) it appears that one or each of the parties to the contract expressly reposes a trust and confidence in the other; (3) the contract or transaction is intrinsically fiduciary and calls for perfect good faith. <u>French v. First Union Sec., Inc.</u>, 209 F. Supp.2d 818, 824-25 (M.D. Tenn. 2002); <u>Macon City Livestock Mkt. v. Kentucky State Bank</u>, 724 S.W.2d 343, 349 (Tenn. Ct. App. 1986).

3

specific material facts that Defendant had a duty to disclose.
In particular, Plaintiff contends that Defendant failed to
disclose to her the facts set forth in paragraphs 17-21 of her
Complaint when it offered to repurchase her bonds.  Those
paragraphs describe allegedly material information which
Plaintiff alleges Defendant failed to disclose prior to selling
Plaintiff the bonds.  Plaintiff contends that the failure to
disclose that information prior to the signing of the release
amounted to a fraudulent omission on Defendant's part that
justifies the recission of the release.  Plaintiff also contends
that the allegedly undisclosed facts were inconsistent with
Defendant's denial of liability in a letter offering to
repurchase Plaintiff's bonds.

According to Plaintiff's Complaint, on September 30, 2003,
Defendant sent Plaintiff a letter that accompanied the release
form which she later signed. (Pl.'s Compl. ¶ 24.)  That letter
states, in pertinent part:

> As a holder of one or both series of the Bonds, you
> were sent a 'Notice of Continuing Default' relating to
> the Bonds by U.S. Bank National Association, the
> Trustee under that certain Trust Indenture between the
> issuer and the Trustee.  The notice described a
> continuing default by the Developer and the status of
> pending litigation.
>
> Specifically, the Trustee describes potential claims of
> violations of securities laws in the original sale of
> the Bonds.  Duncan-Williams, Inc. (the "Company")
> denies that it was involved in any activity that
> constitutes a violation of any securities laws in the
> original sale of the Bonds.  In fact, the risk that the

4

Developer may not complete the project and that the lot
sales could be substantially less than projected was
fully disclosed to all investors.  It was conspicuously
noted in all disclosure documents that the Bonds were
"Speculative."

Even though Duncan-Williams, Inc. vigorously denies it
violated any laws in the Issuance and sale of the
Bonds, we recognize that such assertion, even if true,
does not provide great comfort to our valued customers
who own the Bonds.  Duncan-Williams, Inc. intends to
defend vigorously any lawsuits filed against it
relating to the Bonds.  We realize this process may be
time consuming and expensive.

During the year 2000 you purchased Capstone Series A
Bonds from us.  Since that time you have received six
semi-annual interest payments, but the Trustee has
notified bondholders that no further interest payments
will be made at this time, because sales of the lots
which were developed with the funds raised have not
materialized.

We are informed and believed [sic] that 217 lots have
been developed in this district along with the streets,
curbs and gutters, sewers, water system and other
amenities, and that 131 more lots are undeveloped.
Various claims exist against these lots and it appears
that much litigation will take place over the next
several years.  The Trustee is attempting to locate a
purchaser or purchasers for the lots to generate funds
to pay the bondholders, as well as to cover legal and
other expenses that will be encountered.

The present fair market value of your Bonds, based upon
current bid prices, is only $400.00.  This reflects to
some degree the uncertainty as to what sums, if any,
will be available to the bondholders and how many years
it will take to resolve matters.

Although Duncan-Williams, Inc. believes its position to
be strong and that it will prevail in the ultimate
litigation, it is our belief that many of our customers
will want to liquidate their Bonds and move on to other
things.  Accordingly, Duncan-Williams, Inc. is offering
to purchase your Bonds from you for the sum of
$1,250.00 cash.  This is 25% of the face value of your
Bonds which, together with what you have previously

5

> received as interest, will give you approximately 45%
> of such face value.  Duncan-Williams, Inc. also agrees
> that any customer accepting this proposal retains the
> right to receive any monies paid by the Trustee with
> respect to the Bonds in excess of the amounts paid by
> the Company to purchase the Bonds.  In the event that
> you may wish to discuss this further than with your
> individual broker, please contact any of the following:
>
> Don Clanton
> Duncan F. Williams
> Trey Fyfe
> Don Malmo....

(Def.'s Mot. to Dismiss or in the Alt. for Partial Summ. J., Ex.

4.)[2]  Plaintiff subsequently executed a "Bill of Sale and

Release" dated October 6, 2003, which sold back her bonds to

Defendant for $1,250.00.  That release stated, in pertinent part:

> The undersigned does hereby release and hold Duncan-
> Williams, Inc. harmless from and against any and all
> claims against Duncan-Williams, Inc. that the
> undersigned has, may have had, or may in the future
> have by virtue of his/her purchase and ownership of the
> said bonds.

(Id., Ex. 5.)

---

[2] Generally, when ruling on a Rule 12(b)(6) motion to
dismiss, the Court does not consider matters outside the
pleadings.  Weiner v. Klais & Co., 108 F.3d 86, 88-89 (6th Cir.
1997).  However, "'[d]ocuments that a defendant attaches to a
motion to dismiss are considered part of the pleadings if they
are referred to in the plaintiff's complaint and are central to
her claim.'" Id. at 89 (quoting Venture Assocs. Corp. v. Zenith
Data Sys. Corp., 987 F.2d 429, 431 (7th Cir. 1993)).  Because
Plaintiff referred to the September 30, 2003, letter in her
Complaint (See Pl.'s Compl. ¶ 24), and the enforceability of
Plaintiff's release is central to her claims, the Court considers
the September 30, 2003, letter in ruling on Defendant's motion to
dismiss.

Plaintiff's contentions regarding fraudulent representations relate to information that was allegedly not disclosed prior to the sale of the bonds, as opposed to at the time of the signing of the release.  Plaintiff does not allege that Defendant made any particular misrepresentations or omissions that relate to the release agreement itself.  Rather, the letter accompanying the release agreement shows that Defendant disclosed to Plaintiff that: the bonds were in a status of "continuing default;" that litigation was pending regarding the default; that potential claims of violations of securities laws existed regarding the original sale of the bonds; that no further interest payments would be made on the bonds because sales of lots developed with the funds had not materialized; that "much litigation" would be taking place regarding undeveloped lots; and that the current market value of Plaintiff's bonds, purchased for $5,000.00, was then $400.00. (See id., Ex. 4.)  Plaintiff does not contend that any of the representations in the September 30, 2003, letter were in any way fraudulent, see Evans, 545 S.W.2d at 11, or that any information was omitted from the September 30, 2003, letter that materially affected the agreement itself or made any representations therein fraudulent.[3] See Hill, 875 S.W.2d at 670.

---

[3] The only allegedly fraudulent representation in the September 30, 2003, letter is Defendant's denial of liability. However, Plaintiff fails to state with any specificity how such a denial was fraudulent.  Rather, the record shows that Defendant continues to deny any liability for fraud in this lawsuit.

Approximately one week after receiving the September 30, 2003,

letter, Plaintiff signed the release form and subsequently

accepted a check for $1,250.00 from Defendant, which, to date,

Plaintiff has not returned.  The Court therefore finds that the

release signed by Plaintiff is fully enforceable and that it

operates to bar Plaintiff's claims against Defendant.

Accordingly, Plaintiff's motion is DENIED.[4]


     SO ORDERED this 11th day of August, 2005.

                  JON P. McCALLA
                  UNITED STATES DISTRICT JUDGE

---

[4] Because the Court has denied Plaintiff's motion to
reconsider its November 4, 2004, order, dismissing Plaintiff's
claims, the Court declines to reconsider its denial of
Plaintiff's motion for leave to amend her Complaint for the same
reasons stated in the Court's November 4, 2004, order. (See Order
Granting Def.'s Mot. to Dismiss at 6, n. 2.)

# UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 39 in case 2:04-CV-02448 was distributed by fax, mail, or direct printing on August 12, 2005 to the parties listed.

---

Harold Naill Falls
FALLS & VEACH
1143 Sewanee Rd.
Nashville, TN 37220

Allan J. Wade
ALLAN J. WADE, PLLC.
119 S. Main St.
Ste. 700
Memphis, TN 38103

John B. Veach
FALLS & VEACH
1143 Sewanee Rd.
Nashville, TN 37220

Lori Hackleman Patterson
ALLAN J. WADE, PLLC.
119 S. Main St.
Ste. 700
Memphis, TN 38103

Honorable Jon McCalla
US DISTRICT COURT